## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **AARON HIRSCH, individually and on behalf of all others similarly situated,** | : | **NO. 3:17-cv-1215-J-39JBT** |
| | : | |
| **Plaintiff,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **FORTEGRA FINANCIAL CORP. and ENSURETY VENTURES, LLC d/b/a OMEGA AUTOCARE,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Aaron Hirsch, ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Amended Class Action Complaint (the "Complaint") against Defendants Fortegra Financial Corp. and Ensurety Ventures, LLC d/b/a Omega Autocare (collectively, "Defendants"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.      Plaintiff brings this Complaint against Defendants to secure redress because Defendants willfully violated the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA") and invaded Plaintiff's privacy by causing unsolicited calls to be made to the cellular telephones of Plaintiff and members of the Classes (defined below) through the use of an auto-dialer and/or artificial or pre-recorded voice message.

2.      Defendants made their unauthorized calls without the recipient's consent using an automatic telephone dialing system ("ATDS") and/or a pre-recorded voice for the purpose of telemarketing and soliciting business from Plaintiff and members of the Classes.

3.      The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Classes under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

4.      Plaintiff Aaron Hirsch is a citizen of Maryland and resides in Montgomery County, Maryland.

5.      Defendant Fortegra Financial Corp. ("Fortegra") is a corporation organized under the laws of Delaware and maintains its principal place of business in Jacksonville, Florida.

      a.   Fortegra is a nationwide provider of automotive warranty underwriting services, including for Omega Autocare, and a subsidiary of Tiptree Financial, Inc.

      b.   Fortegra's website touts the company "[a]s a leading provider of credit protection, warranty, and specialty underwriting products and services." Among other things, the Fortegra webpage dedicated to "Automotive Solutions" and "Protection Programs" including "Vehicle Service Contracts", states that Fortegra works "through our preferred partner network to provide plans to consumers." Another Fortegra webpage is dedicated to "Warranty Services for Third Party Administrators" and highlights the company's insurance underwriting and "Turnkey Solutions" such as for "Automotive." In its webpage concerning "Warranty Solutions," Fortegra explains that "[t]hanks

2

to vertical alignment, we underwrite and create our own turnkey retail solutions, and deliver valuable services" to its partnering companies.

c. The company website for Omega Autocare prominently displays its affiliation with Fortegra and includes a large Fortegra company logo on its "About Us" webpage. The website also states that "Omega Auto Care is insured by Lyndon Southern Insurance Company ("Lyndon"), a Fortegra company. Lyndon is a wholly owned subsidiary of Fortegra.

6.     Defendant Ensurety Ventures, LLC d/b/a Omega Autocare ("Omega") is a limited liability company organized under the laws of Missouri and maintains its principal place of business in Jacksonville, Florida.

a. Omega markets and sells Omega Autocare warranty policies on behalf of Fortegra.

b.  Omega claims to be "an administration company" and states that it has "multiple marketing companies that offer our products."

c. Omega is managed and operated by its founder and Co-Presidents Patrick O'Brien and Brian Fox, and its Director of Operations Jeremy Lemken.

d. Upon information and belief, during the relevant period, Omega was also operated by or affiliated with Ensurety Group, Inc. ("Ensurety Group"), a Missouri corporation with offices in Arizona and Missouri. Ensurety Group Inc. was founded in 2002. According to its Bloomberg company profile, Ensurety Group provides computer programming services.  During the relevant period, Ensurety Group's officers included its founder Patrick O'Brien, along Joseph Annoreno and Annette Annoreno.

3

7.      Defendants and their agents made, arranged for, supervised and approved the telemarketing calls made to Plaintiff and the Classes concerning Omega Autocare.

8.      Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

10.     The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of each of the Classes is a citizen of a state different from Defendants'. Further, each of the Classes include at least 100 members.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

13.     Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that

4

target this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

15.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

16.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

17.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit certain calls to members of the National Do Not Call Registry ("NDNC").

18.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC

---

[1]     Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748

(N.D. Ill., Dec. 31, 2012).

19.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf,

even if the entity did not directly place the call. Under those circumstances, the entity is deemed

to have initiated the call through the person or entity that directly placed the call.

20.     With respect to misdialed or wrong-number calls, the FCC recently clarified that

"callers who make calls without knowledge of reassignment and with a reasonable basis to believe

that they have valid consent to make the call should be able to initiate one call after reassignment

as an additional opportunity to gain actual or constructive knowledge of the reassignment and

cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the*

*Tel. Consumer Prot. Act of 1991*, FCC 15-72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this

one additional call does not yield actual knowledge of reassignment, we deem the caller to have

constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the

TCPA.

21.     Finally, the TCPA established the NDCR, as well as the requirement that all

businesses that place calls for marketing purposes maintain an "internal" Do-Not-Call list ("IDNC

list"). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on

behalf of that [seller]." *Id.* The TCPA prohibits a company from calling individuals on its IDNC

list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals'

phone numbers are not on the NDNC. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on

the company's behalf, who calls a member of the company IDNC violates the TCPA. The called

party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

22.     The NDNC allows consumers to register their telephone numbers and thereby

indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R.

§ 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

23.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

## COMMON FACTUAL ALLEGATIONS

24.     Defendants market and administer vehicle service contracts in providing automobile warranties, among other products and services. Unfortunately for consumers, Defendants utilized (and continue to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting their goods and services. Defendants are believed to have obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

25.     In Defendants' overzealous attempt to market their goods and services, they placed (and continue to place) phone calls to consumers who never provided consent to the call and to consumers having no relationship with Defendants. Defendants knowingly made (and continue to make) these telemarketing calls without the prior express written consent of the call recipients, and continued to make calls after requests that the calls stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the Classes, but also intentionally and repeatedly violated the TCPA.

## FACTUAL BACKGROUND AS TO PLAINTIFF

26.     On February 17, 2017, Plaintiff registered on the NDNC his residential telephone assigned a number ending in 4936.

27.     Plaintiff's residential telephone uses a voice over internet protocol ("VoIP"); a service for which he is charged for the ability to receive and send calls.

28.     During May and June of 2017, Defendants contacted Plaintiff on his telephone number using an ATDS, as defined by 47 U.S.C. § 227(a)(1), multiple times without first obtaining Plaintiff's written consent and in violation of the NDNC.

29.     Plaintiff received all calls as described above on his telephone assigned a number ending in 4936.

30.     On May 12, 2017, Plaintiff received on his telephone a telemarketing robocall made by or on behalf of Defendants.  In making that call, the caller used an artificial or pre-recorded voice.  Plaintiff's caller ID for the call showed "775-204-2381".

31.     During the call, Plaintiff was transferred to several live operators, who told him they were calling from the "Dealer Processing Center."  The operators explained that they operate as a broker for the Omega Autocare policies and quoted Plaintiff a warranty price of $3,880.00.

32.     During the discussion, the call was disconnected.  However, within minutes, Mr. Hirsch received another call from Defendants and the operators continued their telemarketing efforts to sell Plaintiff an Omega Autocare warranty policy.  Plaintiff then disconnected the call.  Plaintiff's caller ID for the call showed "714-733-1261".

33.     On June 6, 2017, Plaintiff received an additional telemarketing robo call from Defendants concerning Omega Autocare warranty policy. During that call, Plaintiff spoke with a live operator who sought to market and sell him an automobile warranty policy.  Plaintiff then disconnected the call.

34.     On information and belief, and based on the circumstances of the calls as described above, Defendants called Plaintiff using an ATDS.

9

35.     Plaintiff understood the purpose of Defendants' calls was to market Defendants' services and solicit business from him.

36.     Plaintiff did not have a prior business relationship with Defendants, nor was Plaintiff interested in Defendants' services.

37.     Plaintiff did not consent to being called by Defendants for telemarketing purposes and the calls received from Defendants were an intrusion into Plaintiff's privacy and caused Plaintiff annoyance and an unnecessary expenditure of his time and efforts.

38.     Plaintiff is the exclusive user of the telephone assigned the number ending in 4936 and the account holder of record for that account.

## LEGAL BASIS FOR CLAIMS

39.     With respect to Plaintiff, Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40.     Plaintiff did not provide Defendants prior express written consent to receive calls to his telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227(b)(1)(A).

41.     All calls Defendants made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1) and/or 47 U.S.C. § 227(c).

42.     Plaintiff has reason to believe that Defendants have called, and continue to call, thousands of telephone customers to market their products and services without consent required by the TCPA and/or in violation of the NDNC.

43.     Defendants' repeated violations of the NDNC demonstrate that Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA and the rules and regulations promulgated thereunder.

44.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited telephone calls.

45.     On behalf of Plaintiff and the Classes, Plaintiff seeks an injunction requiring Defendants to cease all telemarketing to consumers on their telephones and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## **CLASS ACTION ALLEGATIONS**

46.     Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the Classes, which include:

a.      The "ATDS Class," consisting of all individuals in the United States who received a telemarketing call for Omega Autocare made by or on behalf of Defendants to the individual's cellular telephone or VoIP telephone line through the use of an automatic telephone dialing system, or pre-recorded or artificial voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date that class notice is disseminated, where Defendants' records fail to indicate prior express written consent from the recipient to make such call;

b.      The "Robo Call Class" consisting of all individuals in the United States who within four years prior to the commencement of this litigation received a telemarketing call for Omega Autocare made by or on behalf of Defendants to the individual's residential telephone or VoIP telephone line, where Defendants' records fail to indicate prior express written consent from the recipient to make such call; and

c.      The "NDNC Class," consisting of all persons in the United States who, within four years prior to the commencement of this litigation, received two or more telemarketing calls per year for Omega Autocare made by or on behalf of Defendants on their telephone number that had been registered on the National Do-Not-Call Registry.

47.     Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

48.     Plaintiff and the Class members were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Class *via* their telephones by using an ATDS, thereby causing Plaintiff and the Class to reduce available telephone time for which Plaintiff and the Class members previously paid or incur certain telephone charges; and Plaintiff and Class members' privacy was invaded.

49.     The exact size of each of the Classes is presently unknown but can be ascertained through a review of Defendants' records and the NDNC, and it is clear that individual joinder is impracticable. Defendants made telephone calls to thousands of consumers who fall into the definition of each of the Classes.

50.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

51.     Common questions for the Classes include, without limitation:

    a.      Whether Defendants' conduct violated the TCPA;

    b.      Whether Defendants systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after October 16, 2013, and/or continued to make calls after being requested to stop;

    c.      Whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct;

    d.      Whether Defendants systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded or artificial voice;

12

e.      Whether Defendants violated the TCPA by making telemarketing calls to telephone numbers that had been registered on the NDNC; and

f.      Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

52.     Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

53.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions.

54.     Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

55.     This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole.

56.     Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

57.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

58.     The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

13

59.     Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct.

60.     Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

61.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)

62.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 61, as though fully set forth herein.

63.     Defendants, either directly or through their agents, made unsolicited and unauthorized calls using an ATDS or pre-recorded/artificial voice to Plaintiff's and the ATDS Class members' cellular and VoIP telephones for the purpose of marketing Defendants' products and/or services.

64.     The VoIP telephone service used by Plaintiff and the ATDS Class constitutes an other telephone service under 47 U.S.C. § 227(b)(1)(A)(iii).

65.     Defendants made the calls without obtaining prior express written consent from Plaintiff and the ATDS Class.

66.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

67.     Defendants' conduct invaded the privacy and cause annoyance to Plaintiff and the ATDS Class.

68.     As a result of Defendants' violations of the TCPA, Plaintiff and the ATDS Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

69.     Plaintiff and the ATDS Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)

70.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 69, as though fully set forth herein.

71.     As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendants, Plaintiff and members of the ATDS Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular or VoIP telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## THIRD CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(B)

72.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 61, as though fully set forth herein.

73.     Defendants, either directly or through their agents, made unsolicited and unauthorized calls using a pre-recorded or artificial voice to Plaintiff's and the Robo Call Class members' residential or VoIP telephones for the purpose of marketing Defendants' products and/or services.

15

74.      Defendants, either directly or through their agents, made the calls without obtaining prior express consent from Plaintiff and the Robo Call Class.

75.      The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

76.      Defendants' conduct invaded the privacy and cause annoyance to Plaintiff and the Robo Call Class.

77.      As a result of Defendants' violations of the TCPA, Plaintiff and the Robo Call Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

78.      Plaintiff and the Robo Call Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FOURTH CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, § 227(b)(1)(B)

79.      Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 61 and 72 through 78, as though fully set forth herein.

80.      As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by Defendants, Plaintiff and members of the Robo Call Class are entitled to treble damages of up to $1,500 for each and every call made to their telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)

81.      Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 61, as though fully set forth herein.

16

82.     Defendants, either directly or through their agents, made telemarketing calls without obtaining prior express consent and in violation of the NDNC.

83.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

84.     Defendants' conduct invaded Plaintiff's privacy.

85.     As a result of Defendants' violations of the TCPA, Plaintiff and the NDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

86.     Plaintiff and the NDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SIXTH CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)

87.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 61 and 81 through 86, as though fully set forth herein.

88.      As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(c), by Defendants, Plaintiff and members of the NDNC Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

## JURY DEMAND

Plaintiff and the Classes demand a jury trial on all issues so triable.

## **<u>RELIEF REQUESTED</u>**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request the following relief:

a.      An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Berger & Montague, P.C. and Butzel Long, P.C. as Class Counsel;

b.      An award of actual or statutory damages for each and every violation to each member of the Classes pursuant to 47 U.S.C. § 227(b)(3)(B), § 227(c)(5);

c.      An award of treble actual or statutory damages for each and every knowing and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(b)(3)(B), § 227(c)(5);

d.      Injunctive relief prohibiting Defendants' conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A), § 227(c)(5);

e.      Pre-judgment and post-judgment interest on monetary relief; and

f.      All other and further relief as the Court deems necessary, just and proper.

Dated:  November 20, 2017                    Respectfully submitted,


                                             /s/ Steven G. Wenzel
                                             Steven G. Wenzel, FL Bar. No. 159055
                                             **WENZEL FENTON CABASSA, P.A.**
                                             1110 North Florida Avenue, Suite 300
                                             Tampa, FL  33602
                                             Telephone:  (813) 223-6545
                                             Facsimile:  (813) 229-8712
                                             swenzel@wfclaw.com

                                             Michael Dell'Angelo
                                             Lane L. Vines
                                             Jonathan Z. DeSantis, FL Bar No. 112446
                                             **BERGER & MONTAGUE, P.C.**
                                             1622 Locust Street
                                             Philadelphia, PA  19103
                                             Telephone:  (215) 875-3000
                                             Facsimile:  (215) 875-4604
                                             mdellangelo@bm.net
                                             lvines@bm.net
                                             jdesantis@bm.net

                                             Max F. Maccoby
                                             Thomas Bick
                                             **BUTZEL LONG, P.C.**
                                             1909 K Street, NW, Suite 500
                                             Washington, D.C. 20006
                                             Telephone:  (202) 454-2800
                                             Facsimile:  (202) 454-2805
                                             maccoby@butzel.com
                                             bick@butzel.com
                                             *Attorneys for Plaintiff and Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2017, I caused the foregoing Amended

Class Action Complaint to be served via overnight mail on the following parties:

Fortegra Financial Corp.
c/o Cogency Global Inc., Registered Agent
115 North Calhoun St., Suite 4
Tallahassee, FL  32301

Ensurety Ventures, LLC
c/o Christopher P. Meier, Esq.
Greenspoon Marder, PA
100 West Cypress Creek Road, Suite 700
Ft. Lauderdale, FL  33309


_/s/ Steven G. Wenzel_
Steven G. Wenzel