## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **AARON HIRSCH, individually and on behalf of all others similarly situated,** | : | **No. 3:17-cv-01215-BJD-JBT** |
| | : | |
| **Plaintiff,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **FORTEGRA FINANCIAL CORP.; LYNDON SOUTHERN INSURANCE COMPANY; INSURANCE COMPANY OF THE SOUTH; LOTSOLUTIONS, INC., AUTO KNIGHT MOTOR CLUB, INC., ENSURETY, INC., ENSURETY GROUP, INC., EGV COMPANIES, INC., and ENSURETY VENTURES, LLC d/b/a OMEGA AUTOCARE,** | : | **CLASS ACTION** |
| | : | |
| | : | **Judge Brian J. Davis** |
| | : | |
| | : | **Magistrate Judge Joel B. Toomey** |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

---

### CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Aaron Hirsch, ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Second Amended Class Action Complaint (the "Complaint") against Defendants Fortegra Financial Corp., Lyndon Southern Insurance Company, Insurance Company of the South, LOTSolutions, Inc., Auto Knight Motor Club, Inc., Ensurety Group, Inc., EGV Companies, Inc., Ensurety, Inc., and Ensurety Ventures, LLC d/b/a Omega Autocare (collectively, "Defendants"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

### INTRODUCTION

1.      Plaintiff brings this Complaint against Defendants to secure redress because Defendants willfully violated the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA") and invaded Plaintiff's privacy by causing unsolicited calls to be made to the cellular

telephones of Plaintiff and members of the Classes (defined below) through the use of an auto-dialer and/or artificial or pre-recorded voice message.

2.      Defendants made their unauthorized calls without the recipient's consent using an automatic telephone dialing system ("ATDS") and/or a pre-recorded voice for the purpose of telemarketing and soliciting business from Plaintiff and members of the Classes.

3.      The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Classes under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

4.      Plaintiff Aaron Hirsch is a citizen of Maryland and resides in Montgomery County, Maryland.

5.      Defendant Fortegra Financial Corp. ("Fortegra") is a corporation organized under the laws of Delaware and maintains its principal place of business in Jacksonville, Florida.

6.      Fortegra is a nationwide provider of automotive warranty underwriting services, including for Omega Autocare, and a subsidiary of Tiptree Financial, Inc.

7.      Fortegra's website touts the company "[a]s a leading provider of credit protection, warranty, and specialty underwriting products and services." Among other things, the Fortegra webpage dedicated to "Automotive Solutions" and "Protection Programs" including "Vehicle Service Contracts", states that Fortegra works "through our preferred partner network to provide plans to consumers." Another Fortegra webpage is dedicated to "Warranty Services for Third Party Administrators" and highlights the company's insurance underwriting and "Turnkey

2

Solutions" such as for "Automotive." In its webpage concerning "Warranty Solutions," Fortegra explains that "[t]hanks to vertical alignment, we underwrite and create our own turnkey retail solutions, and deliver valuable services" to its partnering companies.

8.      The company website for Omega Autocare prominently displays its affiliation with Fortegra and includes a large Fortegra company logo on its "About Us" webpage. The website also states that "Omega Auto Care is insured by Lyndon Southern Insurance Company, a Fortegra company." Lyndon is a wholly owned subsidiary of Fortegra.

9.      Defendant Lyndon Southern Insurance Company Corporation ("Lyndon") is incorporated in Delaware, is a subsidiary of Fortegra Financial Corp., and is an insurer for vehicle service contracts originated by Omega.

10.     Defendant Insurance Company of the South ("ICS") is domiciled Georgia insurance company, is a subsidiary of Fortegra Financial Corp., and is an insurer for vehicle services contracts originated by Omega.

11.     Defendant LOTSolutions, Inc. ("LOTS") is incorporated in Georgia and assists Lyndon and ICS in insuring vehicle services contracts.

12.     Defendant Auto Knight Motor Club, Inc. ("Auto Knight") is a California corporation.

13.     Defendant Ensurety Group, Inc. is incorporated in Missouri and maintains its principal place of business in Missouri and Scottsdale, Arizona.

14.     Defendant EGV Companies, Inc. is incorporated in Missouri and maintains its principal place of business in O'Fallon, Missouri.

15.     Defendant Ensurety, Inc. maintains its principal place of business in Jacksonville, Florida.

16.     Defendant Ensurety Ventures, LLC d/b/a Omega Autocare is a limited liability company organized under the laws of Missouri and maintains its principal place of business in Jacksonville, Florida.

17.     Upon information and belief, Ensurety Group, Inc., EGV Companies, Inc., Ensurety, Inc., and Ensurety Ventures, LLC are subsidiaries, affiliates or alter-egos of one another and operate collectively as the business known as Omega Autocare ("Omega Autocare").

      a. Omega Autocare markets and sells Omega Autocare warranty policies on behalf of Fortegra, Lyndon, ICS, LOTS and Auto Knight.

      b.  Omega Autocare claims to be "an administration company" and states that it has "multiple marketing companies that offer our products."

      c. Omega Autocare is managed and operated by its founder and Co-Presidents Patrick O'Brien and Brian Fox, and its Director of Operations Jeremy Lemken.

      d. Upon information and belief, during the relevant period, Ensurety Ventures, LLC was operated by or affiliated with Ensurety Group, Inc., which was founded in 2002. According to its Bloomberg company profile, Ensurety Group provides computer programming services.  During the relevant period, Ensurety Group's officers included its founder Patrick O'Brien, along Joseph Annoreno and Annette Annoreno.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

19.     The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of each of the Classes is a citizen of a state different from Defendants'. Further, each of the Classes include at least 100 members.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

22.     Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

23.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

24.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

5

25.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

26.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency

---

[1]     Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit certain calls to members of the National Do Not Call Registry ("NDNC").

27.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

28.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity that directly placed the call.

29.     With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

30.     Finally, the TCPA established the NDCR, as well as the requirement that all businesses that place calls for marketing purposes maintain an "internal" Do-Not-Call list ("IDNC list"). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id.* The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the NDNC. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC violates the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

31.     The NDNC allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

32.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

33.     Calls that are made in violation of the TCPA that employ artificial or prerecorded voices are referenced as "robocalls."

## COMMON FACTUAL ALLEGATIONS

### A.  Omega Autocare and the Call Centers

34.     As described more fully below, Omega Autocare markets vehicle service contracts ("VSC") for consumers nationwide by telemarketing through numerous third-party

sellers and marketers, some of which market by illegally robocalling consumers' cell phones, landlines, and by calling numbers listed in the National Do Not Call Registry.

35.    Omega Autocare provides administrative services for VSCs, by, among other things, fielding complaints or claims, obtaining underwriting and coverage for VSCs from Fortegra's subsidiaries Lyndon, ICS, LOTS, and most important, finding and hiring "call centers" or "sellers" to make hundreds of thousands of telemarketing consumer calls for VSCs.

36.    Some of the lead generators and call centers Omega Autocare (or one of its call centers or sellers) has engaged to telemarket VSCs include Castle Motors, Data Genie, JMV Consulting, Lions Head Consulting, Maximized Marketing, Mega Media, Merchantme, Pharaoh Consulting, Priority Referral Group, Securme, CarGuardian, Auto Protection Plus, and Wolf Marketing.

37.    In seeking to avoid regulatory and statutory liability, some of those call centers engage other call centers to make robocalls and telemarketing calls.  For example, CarGuardian engaged Consultme LLC to make robocalls, where if a consumer answered the robocall, he or she would be transferred to a live caller at CarGuardian.  In that way, CarGuardian and Omega Autocare could then claim they were unaware of the robocalls themselves.

38.    Omega Autocare, when obtaining a VSC by telemarketing through a call center, shares information with the call center by software—such as that provided by Moxy Solutions, LLC—that identifies the consumer, his or her VSC product, pricing per type of car, local car dealership information, credit card information, and the policy itself.

39.    Omega Autocare also shares consumer VSC information with the call centers and financial services vendors like Paylink Plans LLC, which split fees between the call centers, Omega Autocare, and Paylink itself, depending on the type of VSC and when the consumer cancels it.

40.     By selecting call centers, sharing customer information with them, authorizing them to sell VSCs under their name "Omega Autocare," administering those VCAs by managing premium payments, refunds, cancellations, and claims, and by splitting fees with call centers on customer VSCs, Omega Autocare is vicariously liable for their illegal robocalling and telemarketing practices.

**B.  Control of Omega Autocare by Fortegra and Its Subsidiaries**

41.     As alleged above, Fortegra, through its subsidiaries Lyndon, ICS, and LOTS insures the VSCs that Omega Autocare obtains by its unlawful robocalling and telemarketing practices.

42.     For example, on April 11, 2016, Omega Autocare (through EGV Companies, Inc.) contracted with Fortegra subsidiaries Lyndon, ICS, Auto Knight, and LOTS to sell VSCs through third-party "sellers" which include call centers (hereafter "call centers").  The contract is called the "Program Agreement."  Upon information and belief, a similar agreement may have been in place prior to April 2016.

43.     In the Program Agreement, Lyndon, ICS, (and at times Auto Knight) and LOTS, in exchange for underwriting and insuring VSCs, control, direct, or otherwise decide or have the right to decide that Omega Autocare do the following:

        a.     That Omega Autocare would obtain Lyndon, ICS, Auto Knight, and LOTS's prior approval to market VCSs in particular geographic territories to prospective customers;

        b.     That Omega Autocare would contract with a call center to make telemarketing calls to sell VSCs;

        c.     That Omega Autocare would provide Lyndon, ICS, Auto Knight, and LOTS with a list of call centers it contracts with, and those insurers would

10

have the right to cancel any third-party contract between Omega Autocare and a call center;

d.       That there would be a right to accept payment from a call center directly and not through Omega Autocare, and that each contract formed between Omega Autocare and a call center would have an enforceable provision stating as much;

e.       That Omega Autocare would obtain preapproval from Lyndon, ICS, Auto Knight, and LOTS for any use of printed, written, and electronic materials, including on any website, with their names, logos, or trademarks, or that of their affiliates;

f.       That Omega Autocare would use its best efforts that call centers advertise and market with materials preapproved by Lyndon, ICS, Auto Knight, and LOTS for VSCs they approved to be marketed and sold;

g.       That Omega Autocare would ensure that call centers not advertise or market Lyndon, ICS, and LOTS names, logos, or trademarks without their preapproval;

h.       That Omega Autocare would ensure that call centers not make representations about VSC terms and conditions without the preapproval of Lyndon, ICS, and LOTS;

i.       That Omega Autocare would ensure that call centers remit funds and report monthly regarding call center sales, cancellations, claims made and paid, net amounts due, to Lyndon, ICS, and LOTS;

j.       That Omega Autocare would ensure that call centers not incur any debts or liabilities in their name;

11

k.      That Omega Autocare would pay refunds to customers, provide VSC termination notices to customers, corresponds to customers, and anything else necessary for administering customer VSCs;

l.      That Omega Autocare would provide Lyndon, ICS, and LOTS with electronic data of VSCs (including the name and address of customer, the VSC plan, the VSC number, the effective date, the retail price, and cancellation notices) and payments under those VSCs;

m.      That Omega Autocare would use software preapproved by Lyndon, ICS, and LOTS showing the unearned premium obligations with risks insured under VSCs, and claims reserves for products;

n.      That Omega Autocare would ensure that call centers have all the necessary licensing for marketing and selling VSCs;

o.      That Omega Autocare would train call centers agents in marketing VSCs;

p.      That Omega Autocare would earn an administrative fee on VSCs separate from the premiums earned by Lyndon, ICS, Auto Knight, and LOTS on VSCs;

q.      That Omega Autocare, once it receives premium payments from VSC customers, would deposit in a segregated bank account as a fiduciary for payment of customer claims, its administrator fees, customer refunds, amounts due to Lyndon, ICS, and LOTS for each VSC;

r.      That Lyndon, ICS, and LOTS would have the right to audit Omega Autocare;

s.     That Omega Autocare would indemnify Lyndon, ICS, and LOTS from any claims made by acts or omissions arising from the conduct of any agent at any call center;

t.     That Lyndon, ICS, and LOTS would control any litigation against Omega Autocare and/or themselves concerning claims arising from any former or current customer, and a requirement of notice concerning litigation, and a production of all relevant documents; and

u.     That Auto Knight, on behalf of Lyndon, ICS, and LOTS, has a right to enforce any of these aforementioned rights.

44.     Based on the rights of Lyndon, ICS, (and at times Auto Knight) and LOTS described above, including but not limited to directing Omega Autocare's business practices, their access to Omega Autocare's VSC and customer data, their control over Omega Autocare and the call center's use of their name, trademark, and logo, that Omega Autocare handles their fees as a fiduciary for them, and their ultimate control over the telemarketing call centers themselves through Omega Autocare, those entities are vicariously liable for the illegal telemarketing practices selling VSCs for the benefit of Omega Autocare.

**C.  Fortegra Is Vicariously Liable for Its Subsidiaries**

45.     Fortegra, as principal, has directed Lyndon, ICS, Auto Knight, and LOTS as its agents to work with Omega Autocare.  In the alternative, Lyndon, ICS, Auto Knight, and LOTS are alter egos of Fortegra.

46.     Fortegra controls Auto Knight in that its officers are identical to Auto Knight's officer. Specifically, Fortegra's officers are CEO Richard Kahlbaugh, CFO Michael Grasher, Treasurer George Freeman, Executive Vice President Joseph McCaw, and Secretary and COO Christopher Romaine. According to Auto Knight Motor Club, Inc.'s 2016 Statement of

Information for California, its officers are CEO Joseph McCaw, CFO Michael Grasher and Secretary Christopher Romaine.

47.     Fortegra controls Lyndon. The Delaware Department of Insurance in its insurance examination report states that "[Lyndon]'s bylaws provide that the Board may establish one or more committees. There are no committees at [Lyndon's] level. Corporate governance is administered at the ultimate controlling party level by Fortegra Financial Corporation (Fortegra)."

48.     The Delaware Department of Insurance states that Fortegra files consolidated federal income tax returns for Lyndon, ICS, Auto Knight, and LOTS, and that "Fortegra pays the federal income tax liability of the group and each subsidiary reimburses Fortegra for its respective share of the amount."

49.     The Delaware Department of Insurance states that "all" of Lyndon's "service and operational needs" are provided by LOTS Intermediate Company, a Delaware corporation, which is owned 100% by Fortegra.

50.     Lyndon's president is Joe McCaw, who also serves as Fortegra's Executive Vice President.

51.     As of January 1, 2015, according to the California Department of Insurance in its insurance examination report, Lyndon and ICS engaged in a pooling agreement, where "ICS[] ceded 100% of direct and assumed business net of other insurance to Lyndon."

52.     Assuming that Fortegra does not actually control Lyndon, ICS, Auto Knight, and LOTS as their alter ego, those same facts make Fortegra vicariously liable for those subsidiaries aforementioned conduct with Omega Autocare in telemarketing VSCs because:

a.       Fortegra must be aware of, and has consented to, Omega Autocare displaying Fortegra's name and logo on its "About Us" webpage along with Lyndon as "a Fortegra company;"

b.       Fortegra must be aware of, and has consented to, Auto Knight, ISC, LOTS, and Lyndon's extensive rights and duties with regard to Omega Autocare's business, its VSC products, its status as their fiduciary, the source of the fees and premiums earned by them from Omega Autocare's products, the pricing of VSCs, its indemnity and litigation rights, and so forth; and

c.       Fortegra must have access to the information that its subsidiaries have concerning customer VSC sales, premium obligations, claims made, and coverage obligations.

53.    Based on the above, Fortegra is vicariously liable in that it is aware of its subsidiaries involvement in Omega Autocare and it is accepting the financial benefit of what they are doing.

**FACTUAL BACKGROUND AS TO PLAINTIFF**

54.    On February 17, 2017, Plaintiff registered on the NDNC his residential telephone assigned a number ending in 4936.

55.    Plaintiff's residential telephone uses a voice over internet protocol ("VoIP"); a service for which he is charged for the ability to receive and send calls.

56.    In addition to being charged for the internet connection itself, Plaintiff separately pays for calls made to and from his VoIP telephone service line, through an annual fee of $35.00 paid to MagicJack.

57.     During May and June of 2017, Defendants contacted Plaintiff on his telephone number using an ATDS, as defined by 47 U.S.C. § 227(a)(1), multiple times without first obtaining Plaintiff's written consent and in violation of the NDNC.

58.     Plaintiff received all calls as described above on his telephone assigned a number ending in 4936.

59.     On May 12, 2017, Plaintiff received on his telephone a telemarketing robocall made by or on behalf of Defendants. In making that call, the caller used an artificial or pre-recorded voice. Plaintiff's caller ID for the call showed "775-204-2381".

60.     During the call, Plaintiff was transferred to several live operators, who told him they were calling from the "Dealer Processing Center." The operators explained that they operate as a broker for the Omega Autocare policies and quoted Plaintiff a warranty price of $3,880.00.

61.     During the discussion, the call was disconnected. However, within minutes, Mr. Hirsch received another call from Defendants and the operators continued their telemarketing efforts to sell Plaintiff an Omega Autocare warranty policy. Plaintiff then disconnected the call. Plaintiff's caller ID for the call showed "714-733-1261".

62.     On June 6, 2017, Plaintiff received an additional telemarketing robocall from Defendants concerning Omega Autocare warranty policy. During that call, Plaintiff spoke with a live operator who sought to market and sell him an automobile warranty policy. Plaintiff then disconnected the call.

63.     On information and belief, and based on the circumstances of the calls as described above, Defendants called Plaintiff using an ATDS.

64.     Plaintiff understood the purpose of Defendants' calls was to market Defendants' services and solicit business from him.

16

65.     Plaintiff did not have a prior business relationship with Defendants, nor was Plaintiff interested in Defendants' services.

66.     Plaintiff did not consent to being called by Defendants for telemarketing purposes and the calls received from Defendants were an intrusion into Plaintiff's privacy and caused Plaintiff annoyance and an unnecessary expenditure of his time and efforts.

67.     Plaintiff is the exclusive user of the telephone assigned the number ending in 4936 and the account holder of record for that account.

68.     For the May 12, 2017 and June 6, 2017 calls, Plaintiff was charged for each call, which was the total number of calls he made and received in 2017 divided by his payment of $35.00 to MagicJack.    Specifically, in 2017, Plaintiff made and received more than five calls but fewer than ten calls on his VoIP number ending in 4936.  Accordingly, Plaintiff was charged between $7.00 (five calls) and $3.50 (ten calls) for the two telemarketing calls made by Defendants.

## LEGAL BASIS FOR CLAIMS

69.     With respect to Plaintiff, Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

70.     Plaintiff did not provide Defendants prior express written consent to receive calls to his telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227(b)(1)(A).

71.     All calls Defendants made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1) and/or 47 U.S.C. § 227(c).

72.     Plaintiff has reason to believe that Defendants have called, and continue to call, thousands of telephone customers to market their products and services without consent required by the TCPA and/or in violation of the NDNC.

73.     Defendants' repeated violations of the NDNC demonstrate that Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA and the rules and regulations promulgated thereunder.

74.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited telephone calls.

75.     On behalf of Plaintiff and the Classes, Plaintiff seeks an injunction requiring Defendants to cease all telemarketing to consumers on their telephones and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the Classes, which include:

a.     The "ATDS Class," consisting of all individuals in the United States who received a telemarketing call for Omega Autocare made by or on behalf of Defendants to the individual's cellular telephone or VoIP telephone line through the use of an automatic telephone dialing system, or pre-recorded or artificial voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date that class notice is disseminated, where Defendants' records fail to indicate prior express written consent from the recipient to make such call;

b.     The "Robocall Class" consisting of all individuals in the United States who within four years prior to the commencement of this litigation received a telemarketing call for Omega Autocare made by or on behalf of Defendants to the individual's residential telephone or VoIP telephone line, where Defendants' records fail to indicate prior express written consent from the recipient to make such call; and

c.     The "NDNC Class," consisting of all persons in the United States who, within four years prior to the commencement of this litigation, received two or more telemarketing calls per year for

18

Omega Autocare made by or on behalf of Defendants on their telephone number that had been registered on the National Do-Not-Call Registry.

d.    The "Maryland ATDS Class," consisting of all individuals in Maryland who received a telemarketing call for Omega Autocare made by or on behalf of Defendants to the individual's cellular telephone or VoIP telephone line through the use of an automatic telephone dialing system, or pre-recorded or artificial voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date that class notice is disseminated, where Defendants' records fail to indicate prior express written consent from the recipient to make such call;

e.    The "Maryland Robocall Class" consisting of all individuals in Maryland who within four years prior to the commencement of this litigation received a telemarketing call for Omega Autocare made by or on behalf of Defendants to the individual's residential telephone or VoIP telephone line, where Defendants' records fail to indicate prior express written consent from the recipient to make such call; and

f.    The "Maryland NDNC Class," consisting of all persons in Maryland who, within four years prior to the commencement of this litigation, received two or more telemarketing calls per year for Omega Autocare made by or on behalf of Defendants on their telephone number that had been registered on the National Do-Not-Call Registry.

77.    Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

78.    Plaintiff and the Class members were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Class *via* their telephones by using an ATDS, thereby causing Plaintiff and the Class to reduce available telephone time for which Plaintiff and the Class members previously paid or incur certain telephone charges; and Plaintiff and Class members' privacy was invaded.

79.    The exact size of each of the Classes is presently unknown but can be ascertained through a review of Defendants' records and the NDNC, and it is clear that individual joinder is

impracticable. Defendants made telephone calls to thousands of consumers who fall into the definition of each of the Classes.

80.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

81.     Common questions for the Classes include, without limitation:

    a.     Whether Defendants' conduct violated the TCPA;

    b.     Whether Defendants systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after October 16, 2013, and/or continued to make calls after being requested to stop;

    c.     Whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct;

    d.     Whether Defendants systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded or artificial voice;

    e.     Whether Defendants violated the TCPA by making telemarketing calls to telephone numbers that had been registered on the NDNC; and

    f.     Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

82.     Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

83.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions.

84.     Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

85.     This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole.

86.     Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

87.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

88.     The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

89.     Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct.

90.     Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

91.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)

92.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 91, as though fully set forth herein.

93.     Defendants, either directly or through their agents, made unsolicited and unauthorized calls using an ATDS or pre-recorded/artificial voice to Plaintiff's and the ATDS Class members' cellular and VoIP telephones for the purpose of marketing Defendants' products and/or services.

94.     The VoIP telephone service used by Plaintiff and the ATDS Class constitutes an other telephone service under 47 U.S.C. § 227(b)(1)(A)(iii).

95.     Defendants made the calls without obtaining prior express written consent from Plaintiff and the ATDS Class.

96.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

97.     Defendants' conduct invaded the privacy and cause annoyance to Plaintiff and the ATDS Class.

98.     As a result of Defendants' violations of the TCPA, Plaintiff and the ATDS Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

99.     Plaintiff and the ATDS Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)

100.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 99, as though fully set forth herein.

101.     As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendants, Plaintiff and members of the ATDS Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular or VoIP telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## THIRD CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(B)

102.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 91, as though fully set forth herein.

103.     Defendants, either directly or through their agents, made unsolicited and unauthorized calls using a pre-recorded or artificial voice to Plaintiff's and the Robocall Class members' residential or VoIP telephones for the purpose of marketing Defendants' products and/or services.

104.     Defendants, either directly or through their agents, made the calls without obtaining prior express consent from Plaintiff and the Robocall Class.

105.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

106.   Defendants' conduct invaded the privacy and cause annoyance to Plaintiff and the Robocall Class.

107.   As a result of Defendants' violations of the TCPA, Plaintiff and the Robocall Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

108.   Plaintiff and the Robocall Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FOURTH CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, § 227(b)(1)(B)

109.   Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 91 and 102 through 108, as though fully set forth herein.

110.   As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by Defendants, Plaintiff and members of the Robocall Class are entitled to treble damages of up to $1,500 for each and every call made to their telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)

111.   Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 91, as though fully set forth herein.

112.   Defendants, either directly or through their agents, made telemarketing calls without obtaining prior express consent and in violation of the NDNC.

113.   The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

114.   Defendants' conduct invaded Plaintiff's privacy.

115.     As a result of Defendants' violations of the TCPA, Plaintiff and the NDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

116.     Plaintiff and the NDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SIXTH CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)

117.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraph numbers 1 through 91 and 111 through 116, as though fully set forth herein.

118.     As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(c), by Defendants, Plaintiff and members of the NDNC Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

## SEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE MD TCPA, MD. CODE, COM. LAW, § 14-3201

119.     Plaintiff re-alleges and incorporates by reference each preceding paragraph numbers 1 through 99, as though fully set forth herein.

120.     As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendant, Plaintiff and members of the Maryland ATDS Class are entitled to damages of up to $500 for each and every call made to their telephone numbers for which the called parties are charged for the call for using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## EIGHTH CAUSE OF ACTION
### VIOLATIONS OF THE MD TCPA, MD. CODE, COM. LAW, § 14-3201

121.    Plaintiff re-alleges and incorporates by reference each preceding paragraph numbers 1 through 91 and 102 through 108, as though fully set forth herein.

122.    As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by Defendants, Plaintiff and members of the Maryland Robocall Class are entitled to damages of up to $500 for each and every telemarketing call made to their residential telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(b)(1)(B).

## NINTH CAUSE OF ACTION
### VIOLATIONS OF THE MD TCPA, MD. CODE, COM. LAW, § 14-3201

123.    Plaintiff re-alleges and incorporates by reference each preceding paragraph numbers 1 through 91 and 111 through 116, as though fully set forth herein.

124.    As a result of violations of the TCPA, 47 U.S.C. § 227(c), by Defendants, Plaintiff and members of the Maryland NDNC Class are entitled to damages of up to $500 for each and every telemarketing call made to their residential telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(c).

## JURY DEMAND

Plaintiff and the Classes demand a jury trial on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request the following relief:

a.    An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Berger & Montague PC and Washington Global Law Group PLLC as Class Counsel;

b.      An award of actual or statutory damages for each and every violation to each member of the Classes pursuant to 47 U.S.C. § 227(b)(3)(B), § 227(c)(5) and/or MD Code, Com. Law, § 14-3201;

c.      An award of treble actual or statutory damages for each and every knowing and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(b)(3)(B), § 227(c)(5);

d.      Injunctive relief prohibiting Defendants' conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A), § 227(c)(5);

e.      An award to Plaintiff and the Classes for their reasonable costs and expenses incurred in this action, including attorney's fees and expert fees to the full extent permitted by law, including without limitation MD Code, Com. Law, § 14-3202;

f.      Pre-judgment and post-judgment interest on monetary relief; and

g.      All other and further relief as the Court deems necessary, just and proper.

Dated:  August 24, 2018          Respectfully submitted,

By: _/s/ Max F. Maccoby_____
Max F. Maccoby, *pro hac vice*
WASHINGTON GLOBAL LAW GROUP PLLC
1701 Pennsylvania Ave., NW, Suite 200
Washington, D.C. 20006
Tel.:  (202) 248-5439
Email:  maccoby@washglobal-law.com

Michael Dell'Angelo, *pro hac vice*
Lane L. Vines, *pro hac vice*
BERGER MONTAGUE PC
1818 Market Street, 36th Floor
Philadelphia, PA 19103
Tel.:  (215) 875-3000
Email:  mdellangelo@bm.net
            lvines@bm.net

Steven G. Wenzel, FL Bar No. 15905
WENZEL FENTON CABASSA, P.A.
1110 North Florida Ave., Suite 300
Tampa, FL 33602
Tel.:  (813) 223-6545
Fax:  (813) 229-8712
Email:  swenzel@wfclaw.com

*Attorneys for Plaintiff and Proposed Classes*

28