# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WALTER STRATTON BAGG and
COOPER LAW, P.A.,**

       **Plaintiffs,**

v.                                                          Case No:    6:15-cv-1666-Orl-37GJK

**USHEALTH GROUP, INC. and
USHEALTH ADVISORS, LLC,**

       **Defendants.**

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **PLAINTIFFS' LIMITED MOTION TO COMPEL (Doc. No. 61)**
>
> **FILED:**       **June 10, 2016**
>
> ---
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED IN PART AND DENIED IN PART**.

**I.**    **BACKGROUND.**

On October 5, 2015, Plaintiffs filed a putative class action complaint (the "Complaint") against USHealth Group, Inc. ("USH Group") and USHealth Advisors, LLC ("USH Advisors") (collectively, the "Defendants"), alleging the Defendants violated certain provisions of the Telephone Consumer Protection Act, as amended by the Junk Facsimile Act of 2005, 47 U.S.C § 227 (the "TCPA"). Doc. No. 1. More specifically, Plaintiffs allege that the Defendants violated

47 U.S.C. § (b)(1)(C)(iii) and 47 C.F.R. § 64.1200(a)(4)(iii) – (iv), by knowingly and willfully "causing the transmission of facsimile advertisements to Plaintiffs and [other members of the putative class] that failed to contain the requisite opt-out notice." Doc. No. 1 at ¶¶ 27, 29. Plaintiffs attach to the Complaint a facsimile they received on January 27, 2015 (the "Facsimile"), which identifies Birsen Goksu as the individual from USH Advisors soliciting business. Doc. No. 1-1. Although the Complaint does not identify any other facsimile, Plaintiffs allege that "[u]pon information and belief, Defendants sent similar facsimile advertisements without opt-out notices to the telephone facsimile machines of other persons and entities." Doc. No. 1 at ¶ 15. Plaintiffs define the putative nationwide class as:

> All persons and entities in the United States who were sent one or more facsimiles to a telephone facsimile machine after September 30, 2011, advertising Defendants' products and/or services, where the advertisement failed to contain an opt out notice required by 47 C.F.R. § 64.1200(a)(4).

Doc. No. 1 at ¶ 18. Plaintiffs request $1,500.00 in statutory damages for each such facsimile, which were knowingly and willfully sent to a class member by Defendants or, in the alternative, $500.00 in statutory damages for each facsimile, which were negligently sent by Defendants to putative class members. Doc. No. 1 at ¶¶ 29-30.

On or about February 25, 2015, Ms. Goksu, the individual identified on the Facsimile, answered five questions by electronic mail. Doc. No. 61-5 at 1-2. Ms. Goksu states the following: (1) she created the Facsimile completely on her own in order to market herself; (2) no one approved the flyer used in the Facsimile; (3) she did not know that sending the Facsimile was unlawful; (4) she found a company, Fax87.com, to send the faxes by doing Google searches; (5) she found the names and fax numbers of local business by using Manta.com; (6) she provided the fax numbers of local businesses to Fax87.com, who then sent the Facsimile to those businesses;

- 3 -

and (7) she did not have an established business relationship with the entities who were sent the Facsimile.  Doc. No. 61-5 at 1-2.

On or about February 16, 2016, Plaintiffs deposed Ms. Goksu.  Doc. No. 69-1 at 19-63.  Ms. Goksu testified as follows: (1) she created the Facsimile at issue completely on her own; (2) no one else created other facsimiles or used them for solicitation; (3) no one from USH Advisors recommended or gave Ms. Goksu the idea to send facsimile solicitations; (4) she told Jim Hmielewski, one of Ms. Goksu's managers, about her idea to fax out solicitations before she created the Facsimile; (5) no one approved of or even viewed the Facsimile before Ms. Goksu sent it; (6) she found prospective business's fax numbers on Manta.com and then copied them to her account at Fax87.com, which then faxed the Facsimile to the businesses; (7) while she is uncertain about the precise number, Ms. Goksu believes she may have sent the Facsimile approximately 30 times to different entities; and (8) she stopped sending out the Facsimile within two (2) weeks because USH Advisors received a complaint about unsolicited fax solicitations.  Doc. No. 69-1 at 24, 26, 29-30, 34, 36-38, 40-41.

On March 20, 2016, Ms. Goksu provided an affidavit stating: (1) she was employed by USH Advisors from November 8, 2013 to November 21, 2015; (2) in January of 2015 she met with Jim Hmielewski to discuss her idea to send unsolicited facsimile advertisements to prospective customers; and (3) Mr. Hmielewski "gave his consent to [Ms. Goksu] to fax the [Facsimile] to prospective customers."  Doc. No. 61-4 at 1.  Thus, Ms. Goksu's deposition testimony, stating that no one from USH Advisors reviewed or approved the sending of the Facsimile is inconsistent with her affidavit, which states that Mr. Hmielewski approved sending the Facsimile to prospective customers.

On January 8, 2016, Plaintiffs served USH Advisors with Plaintiffs' First Set of Interrogatories (Doc. No. 61-2 at 1-12) and Plaintiffs' First Request for Production (Doc. No. 61-2 at 13-20). On March 7, 2016, Plaintiffs served USH Advisors with Plaintiffs' Second Set of Interrogatories (Doc. No. 61-2 at 21-33) and Plaintiffs' Second Request for Production (Doc. No. 61-2 at 34-40. On February 12, 2016, USH Advisors served Plaintiffs with its Unverified Answers to Plaintiffs' First Set of Interrogatories. Doc. No. 61-1 at 1-3. On April 8, 2016, USH Advisors served Plaintiffs with its Third Amended and Supplemental Response to Plaintiffs' First Request for Production. Doc. No. 61-1 at 4-8. On April 8, 2016, USH Advisors also served Plaintiffs with its Unverified Answers to Plaintiffs' Second Set of Interrogatories (Doc. No. 61-1 at 9-17) and its Response to Plaintiff's Second Request for Production (Doc. No. 61-1 at 18-21).

On January 21, 2016, Plaintiffs served USH Group with Plaintiffs' First Set of Interrogatories (Doc. No. 61-2 at 41-53) and Plaintiffs' First Request for Production (Doc. No. 61-2 at 54-62). On February 29, 2016, USH Group served Plaintiffs with its Unverified Answers to Plaintiffs' First Set of Interrogatories (Doc. No. 61-1 at 22-26) and its Responses to Plaintiffs' First Request for Production (Doc. No. 61-1 at 27-37).

As set forth above, regardless of the objections raised and answers provided, the Defendants' responses to Plaintiffs' interrogatories were all unverified. Doc. No. 61-1 at 1-3, 9-17, 22-26. With respect to Plaintiffs' requests for production, Defendants raised various objections to some requests and then generally stated either that Plaintiffs already possess the responsive documents at issue or no responsive documents exist. Doc. No. 61-1 at 4-6, 18-19, 27, 29.

On May 13, 2016, Plaintiffs filed a one-hundred and one (101) page Omnibus Motion to Compel (the "Omnibus Motion"). Doc. No. 55. In it, Plaintiffs raised issues with virtually all

written discovery requests, but Plaintiffs' request for relief was unclear.  *Id.*; *see also* Doc. No. 57 at 2-3 (explaining same).  On May 19, 2016, the Court entered an order denying the Omnibus Motion and directing the parties to meet and confer in a good faith effort to resolve or narrow the issues regarding Plaintiffs' written discovery requests.  Doc. No. 57 at 3-4.

On June 10, 2016, Plaintiffs filed a Limited Motion to Compel (the "Motion").  Doc. No. 61.  In it, Plaintiffs argue the Defendants' respective objections and responses to the following nine (9) discovery requests should be overruled and/or deemed insufficient: Plaintiffs' First Set of Interrogatories to USH Advisors Nos. 6 and 7; Plaintiffs' First Request for Production to USH Advisors Nos. 3-4, 12; Plaintiffs' Second Request for Production to USH Advisors No. 2; Plaintiffs' First Set of Interrogatories to USH Group No. 3; and Plaintiffs' First Request for Production to USH Group Nos. 3 and 9.  Doc. No. 61 at 16-20.  Plaintiffs repeatedly maintain, in conclusory fashion, that Defendants failed and/or refused to undertake any search for responsive documents and answers within Defendants' possession, custody or control.  Doc. No. 61 at 2, 7, 12-13.  Based on Defendants' alleged failure to marshal all responsive documents and obtain responsive answers in their possession, custody or control, Plaintiffs request that the Court enter an order compelling Defendants to do the following:

> (1) Search the company email records of their employees, agents, and contractors to discover communications between their employees, agents and/or contractors and third-party fax broadcasters . . . and produce such documents that relate or refer to the transmission of fax advertisements; (2) conduct a reasonable and thorough inquiry to determine whether fax advertising was engaged in by any other of Defendants' employees, agents and/or contractors, which should include, at minimum, contacting each employee, agent, and contractor by email or phone to ask each whether they ever engaged in fax advertising; (3) describe with particularity the process and results of the investigations; (4) amend their responses to the nine discovery requests referenced in the Motion after engaging in the activities described above; (5) grant Plaintiffs' their reasonable attorneys' fees and costs incurred in

>relation to this Motion; and (6) grant all such other relief as this Court deems proper.

Doc. No. 61 at 20-21. Thus, Plaintiffs' requests for relief, quoted above, seek to have Defendants undertake particular investigatory steps, provide Plaintiffs with a detailed report regarding same, and thereafter serve amended responses to the nine (9) written discovery requests at issue in the Motion. *Id*.

On July 1, 2016, Defendants filed a response (the "Response"). Doc. No. 69. In it, Defendants state that, on July 1, 2016, they served Plaintiffs with verified answers to Plaintiffs' interrogatories. Doc. No. 69 at n.1.[1] Defendants maintain they conducted a thorough investigation for responsive information and documents, and they have fully responded to Plaintiffs' written discovery requests. Doc. No. 69 at 2-17. Defendants further contend that Plaintiffs lack a factual basis for their following allegations: (1) that Defendants refused to perform a reasonable and thorough investigation for responsive documents and information; (2) suggesting that anyone other than Ms. Goksu sent unsolicited facsimile advertisements; and (3) suggesting that anyone outside of Florida sent unsolicited facsimile advertisements. Doc. No. 69 at 8.

Defendants argue that Plaintiffs' mere suspicion that other unsolicited facsimiles may have been sent is not a basis for finding that the Defendants' answers and responses are untruthful or that they failed to conduct a reasonable search for responsive documents and information. Doc. No. 69 at 9. Defendants unequivocally state that their "investigation revealed, among other things, there were no 'facsimiles' or 'other facsimiles' (as defined in Plaintiffs' discovery requests) reasonably within the Defendants' custody, possession, control outside of the lone [Facsimile]

---

[1] Defendants' verified answers are not attached to the Defendants' Response.

attached . . . to the Complaint." Doc. No. 69 at 11.[2]  Finally, Defendants argue that undertaking the specific investigatory steps contemplated by Plaintiffs would pose an undue burden, asserting it would take approximately 23,580 hours to recreate e-mail accounts for the 9,128 independent contractors who have worked for Defendants since September 30, 2011. Doc. No. 69 at 12-13. Thus, Defendants request that the Motion be denied. Doc. No. 69 at 16.

In support of their argument that they conducted a thorough investigation, Defendants attach the affidavit of James L. Jackson, USH Advisors' general counsel (the "Jackson Affidavit"). Doc. No. 69-1 at 1-5.  In it, Jackson avers that he has investigated Plaintiffs' claim of receiving an unsolicited fax since 2015.  *Id*. at ¶¶ 6-7.  Mr. Jackson states that, in response to Plaintiffs' written discovery requests, he consulted with: the Chief Marking Officer of USH Advisors, the Chief Financial Officer of USH Group, Ms. Goksu, James Hmielewski, and all eight (8) of USH Advisor's current Regional Sales Leaders, who manage the field agents nationwide. Doc. No. 69-1 at ¶¶ 8-9.  Based upon his investigation, and the investigations made by the Defendants, Mr. Jackson is "unaware of any other unsolicited facsimile advertisements sent by any agents." *Id*. at ¶ 9.  Mr. Jackson avers that Ms. Goksu acted alone and without authorization from anyone.  *Id*. at ¶ 10.  Thus, Defendants dispute the statement in Ms. Goksu's affidavit that Mr. Hmielewski approved of her sending the unsolicited Facsimile.  *Id*. at ¶ 10.  Moreover, Mr. Jackson maintains that "[n]o facsimiles or other facsimiles . . . were determined to be reasonably within the [Defendants'] custody, possession or control." *Id*. at ¶ 11.  Mr. Jackson states that the only

---

[2] Throughout their written discovery requests, Plaintiffs define "Facsimile" and "Other Facsimile" as follows. Facsimile is defined, as it is herein, as "the Document attached . . . to the [C]omplaint." *See generally*, Doc. No. 61-2 at 17.  Other Facsimiles is defined as: "Any document transmitted [after September 30, 2011] by or on behalf of [the Defendants] to a telephone facsimile machine that promoted [Defendants'] products or services or requested the recipient contract a licensed [local agent of Defendants]." Doc. No. 61-2 at 17.  The Court notes that, as defined, Other Facsimiles is not limited in any way to unsolicited facsimiles which fail to contain the opt-out notice under 47 U.S.C. § 227(a)(4) or 47 C.F.R. §§ 64.1200(a)(4)(iii)-(iv).

unsolicited facsimile discovered during the investigation was the Facsimile attached to the Complaint. *Id*.[3]

In support of their argument that undertaking the investigation requested by Plaintiffs would be an undue burden, the Jackson Affidavit provides that there are 9,128 independent contractor agents in 31 states who have worked for the Defendants since September 30, 2011, and many of them are no longer with the Defendants. Doc. No. 69-1 at ¶ 13. Defendants also provide the affidavit of Terry Shottenkirk, USH Advisors' Computer Network Engineer. Doc. No. 69-7 at 1-5. Mr. Shottenkirk avers that he was asked to search the email account of Ms. Goksu and, because she was no longer with the Defendants, in order to perform a keyword search, he was forced to recreate her email account from Defendants' backup systems. *Id*. at ¶ 6. Mr. Shottenkirk details the many steps he took to recreate Ms. Goksu's email account and states it took him approximately two hours and thirty-five minutes to accomplish that task. *Id*. at ¶¶ 7-13. Mr. Shottenkirk opines that it would take him approximately the same amount of time to recreate email accounts for each employee, agent or independent contractor working for Defendants since September 2011. *Id*. at ¶ 13. Since there are 9,128 former employees, agents, or independent contractors, Mr. Shottenkirk states it would take approximately 23,580 hours to recreate those email accounts in order to perform keyword searches. Doc. No. 69-7 at ¶¶ 14-15. Mr. Shottenkirk further avers that even if twelve 12 fulltime, experienced information and technology

---

[3] Mr. Jackson acknowledges that the investigation did not "include searches of all [Defendants'] current and former employee, agent, and contractor email addresses dating back to September 2011 for evidence of any communications with third-party facsimile broadcasting companies, nor did the investigation described above include contacting each current and former . . . employee, agent and contractor since September 2011 by email or phone to ask whether each individual ever engaged in facsimile broadcasting. The [Defendants] have no reason to believe that any other independent agents have ever sent a fax blast." *Id*. at ¶ 14.

employees worked on that project, it would take a full year to complete the task. Doc. No. 69-7 at ¶¶ 14-16.

On July 15, 2016, with leave of Court, Plaintiffs filed a reply (the "Reply"). Doc. No. 73. In it, Plaintiffs withdraw their request to have Defendants search the email accounts of all former employees, agents and independent contractors, but they "reserve the right to revisit the issue." Doc. No. 73 at n.4. Instead, Plaintiffs now request that Defendants search the email accounts of all current employees, agents, and independent contractors for responsive documents and information. Doc. No. 73 at 3-4. Additionally, Plaintiffs request that Defendants contact all current and former employees, agents, and independent contractors, inquiring whether they ever sent fax advertisements since September 2011. Doc. No. 73 at 4-5.

## II. ANALYSIS.

### A. Discovery Generally.

Parties may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party is entitled to the facts relevant to the litigation. *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 520 (S.D. Fla. 2002). However, "discovery under the Federal Rules of Civil Procedure 'is intended to narrow the scope of the issues and prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact.'" *Centrifugal Air Pumps v. TCS Obsolete, LLC*, No. 6:10-

cv-820-Orl-31DAB, 2011 WL 1627167, at *2 (M.D. Fla. Apr. 29, 2011) (quoting *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1329 n.16 (S.D. Fla. 2011).

The party seeking discovery has the threshold burden of demonstrating that the discovery requested is relevant. *Zorn v. Principal Life Ins. Co.*, 2010 WL 3282982, at *2 (S.D. Ga. Aug. 18, 2010) (citing *Canada v. Hotel Development-Texas, Ltd.*, 2008 WL 3171940, at *1 (N.D. Tex. July 30, 2008)). Relevant information need not be admissible at trial, but rather discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[4] "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." *U.S. v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990) (referencing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "[A] party demanding discovery is required to set forth its requests simply, directly, not vaguely or ambiguously. . . ." *Treister v. PNC Bank*, 2007 WL 521935, at * 2 (S.D. Fla. Feb. 15, 2007).

### B. Unverified Interrogatories.

As set forth above, Defendants' answers to Plaintiffs' interrogatories are unsigned and unverified. *See supra* p. 4; Doc. No. 61-1 at 1-3, 9-17, 22-26. Rules 33(b)(3) and (5), Federal Rules of Civil Procedure, require that all interrogatories be answered under oath and signed by the person answering them. Fed. R. Civ. P. 33(b)(3) and (5). While Defendants state that they have now served verified answers to interrogatories (Doc. No. 61 at n.1), there is no authority for the proposition that a party may serve unverified and unsigned interrogatories only to later substitute

---

[4] Demonstrating relevance progresses in layers. "When the discovery sought appears relevant on its face, the party resisting it must show the lack of relevance by demonstrating that it: (1) does not come within the broad scope of relevance as defined under discovery rule; or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. When relevancy of a discovery request is not apparent on the face of the request, then the party seeking discovery has the burden to show its relevancy." *Zorn*, 2010 WL 3282982, at *2 n. 3 (S.D. Ga. Aug. 18, 2010) (citing *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003)).

sworn and signed interrogatories at a time of that party's choosing. *See Wilson v. Farris*, 6:07-cv-1293-Orl-28KRS, 2008 WL 2695641, at *1 (M.D. Fla. July 2, 2008) (granting motion to compel where interrogatories were unsigned and unverified). Therefore, the unsigned and unverified answers to interrogatories are a nullity. Because Defendants failed to timely serve signed and sworn answers to Plaintiffs' interrogatories, any objections they may have raised are waived except for the attorney-client privilege and work product doctrine. *See* Fed. R. Civ. P. 33(b)(4). Accordingly, the Motion is granted to the extent that on or before August 2, 2016, Defendants shall serve Plaintiffs with full and complete sworn answers to all of Plaintiffs' interrogatories, signed by the person who answers them.

**C. Requests for Production to USH Advisors.**

Plaintiffs challenge USH Advisors' responses to: Plaintiffs' First Request for Production ("RFP") Nos. 3-4, and 12; and Plaintiffs' Second RFP No. 2. Doc. No. 61 at 3-4, 16-19.

Plaintiffs' First RFP No. 3 requests: "Please produce all Facsimiles and Other Facsimiles." Doc. No. 61-1 at 4. USH Advisors' response states: "As for 'Facsimiles,' none other than what was received from Plaintiffs in discovery. As to 'Other Facsimiles,' none." Doc. No. 61-1 at 4. In the Motion, Plaintiffs argue that USH Advisors should be compelled to produce a copy of the Facsimile, which Plaintiffs attached to the Complaint, and Plaintiffs find incredulous USH Advisors' assertion that there are no documents in its possession, custody or control of "Other Facsimiles" Doc. No. 61 at 14-16. In his affidavit, Mr. Jackson avers that the only Facsimile the Defendants "have located is the single facsimile the Named Plaintiffs produced to the [Defendants] after making their claim – it was not independently located during the [Defendants'] investigation since the [Defendants] never had been previously provided with this facsimile." Doc. No. 69-1 at ¶ 11. Thus, USH Advisors asserts that, except for what was

attached to the Complaint, there is no Facsimile in its possession, custody, or control. *Id*. Accordingly, USH Advisors' response of "none" is a full and complete answer to Plaintiffs' First RFP No. 3.[5]

Despite their incredulity, Plaintiffs have failed to come forth with any factual support for their speculative argument that other agents across the country must have sent similar facsimiles. *see also Centrifugal Air Pumps*, No. 6:10-cv-820-Orl-31DAB, 2011 WL 1627167, at *2 (M.D. Fla. Apr. 29, 2011) (requiring factual basis for discovery). Moreover, as set forth above (*see* n.2), Plaintiffs' definition of Other Facsimiles is so broad that it is not even limited to unsolicited facsimiles that do not contain the statutory and regulatory required opt-out notices. *See* Doc. No. 61-2 at 17. Accordingly, the Motion will be denied as to Plaintiffs' First RFP No. 3 to USH Advisors.

Plaintiffs' First RFP No. 4 to USH Advisors seeks production of all documents related to the Facsimile and Other Facsimiles produced in response to their First RFP No. 3. Doc. No. 61-2 at 17-18. USH Advisors' response refers back to its response to the First RFP No. 3, *i.e.*, stating that no such documents exist in USH Advisors' possession, custody, or control. Doc. No. 61-1 at 5. Again, USH Advisors' response is full, complete and binding, and Plaintiffs have failed to come forth with any factual basis for their speculative belief that responsive documents must exist. Accordingly, the Motion will be denied as to Plaintiffs' First RFP No. 4 to USH Advisors.

USH Advisors also answered "none" to Plaintiffs' First RFP No. 12, which seeks "all documents that relate to the transmission of the Facsimile or Other Facsimiles by a Third Party

---

[5] Although Plaintiffs argue USH Advisors should be ordered to produce the Facsimile USH Advisors received from Plaintiffs (Doc. No. 61 at 14-16), the Court sees no purpose in doing so.

Fax Broadcaster, Agent, or Third Party on Your behalf." Doc. No. 61-1 at 6. For the same reasons set forth above with respect to First RFP Nos. 3 and 4, the Motion will be denied as to First RFP No. 12 to USH Advisors.

Plaintiffs' Second RFP No. 2 seeks:

> Please produce all electronic mail sent or received by UHA Agents (defined above) through their "@ushadvisors.com" email accounts to or from any Third Party Fax Broadcaster or other Third Party authorized to send fax transmissions that relate or refer to transmission of fax advertisements to recipients, or that in any way relate to the sending of fax advertisements.

Doc. No. 61-1 at 18. USH Advisors response provides:

> Objection, overbroad, immaterial and unduly burdensome. Plaintiffs are attempting to utilize discovery for a prohibited "fishing expedition." *See, e.g., Shannon v. Albertelli Firm, P.C.,* 610 Fed. Appx. 866 (11th Cir. 2015); *Yellow Pages Photos, Inc. v. Ziplocal, LP,* 795 F. 3d 1255 (11th Cir. 2015); *Salvato v. Miley,* 2013 WL 2712206 (M.D. Fla. Jun. 11, 2013); *Jackson v. BellSouth Telecommunications, Inc.,* 2002 WL 34382751 (S.D. Fla. Jun. 4, 2002); *see also Thermoset Corp. v. Bldg. Materials Corp. of Am.,* 2014 WL 6473232 (S.D. Fla. Nov. 18, 2014); *Solyom v. World Wide Child Care Corp.,* 2015 WL 1886274 (S.D. Fla. Apr. 16, 2015). To date, Plaintiffs have identified one former independent UHA agent who sent one facsimile "blast" allegedly in violation of the TCPA, and are now seeking discovery relating to other current and former independent agents (there are over 100) even though there is no evidence remotely suggesting that other independent agents sent any fax "blasts" in violation of the TCPA. Without waiving said objection, UHA is not aware of any other current or former independent agents, other than the one identified in this case, who have sent any faxes in violation of the TCPA during the class period identified in the operative complaint, but UHA will attempt to investigate Birsen Goksu's UHA e-mail account even though she testified her personal (Gmail) account was the one she used [f]or the most part . . ." during the time she was associated with UHA.

Doc. No. 61-1 at 19. In their Reply, Plaintiffs state that in light of Mr. Shottenkirk's affidavit, Plaintiffs "are withdrawing their request to have the email accounts of former agents searched."

Doc. No. 73 at 4. Second RFP No. 12 appears to include the email accounts of both former and current agents of USH Advisors. Doc. No. 61-1 at 18. USH Advisors have demonstrated that searching the email accounts of all 9,128 agents since September 2011 would be unduly burdensome. Doc. No. 69-1. Moreover, Plaintiffs have failed to establish a factual basis for their belief that agents other than Ms. Goksu-Sovlak sent unsolicited facsimiles, which did not contain the opt-out notice. If Plaintiffs wish to have USH Advisors search the email accounts of current agents, then it should serve such a request. Accordingly, the Motion is denied as to Second RFP No. 12.

### D. First RFP to USH GROUP Nos. 3 and 9.

Plaintiffs' First RFP Nos. 3 and 9 to USH Group seek all Facsimiles and Other Facsimiles, and all documents, which reflect USH Group's "authorization to any Third Party Fax Broadcaster to transmit the Facsimile or Other Facsimiles." Doc. No. 61-1 at 27, 29. USH Group responds by stating there is no Facsimile or Other Facsimiles other than the Facsimile Defendants received in discovery from Plaintiffs, and there are no documents responsive to RFP No. 9. *Id*. USH Group's responses are full, complete, and binding on USH Group. Again, Plaintiffs fail to provide anything more than wholly conclusory statements for the proposition that USH Group failed to diligently search for all responsive documents in its possession, custody, or control. *See* Doc. Doc. No. 61 at 2, 7, 12-13. Accordingly, the Motion will be denied with respect to Plaintiffs' First RFP to USH Group Nos. 3 and 9.[6]

---

[6] Since Defendants fully and completely responded to all RFPs at issue and Plaintiffs have failed to come forth with anything more that pure speculation for their assertion that Defendants' responses are not accurate, there is no reason to consider whether Defendants should be directed to perform the particular investigatory procedures Plaintiffs request in the Motion.

**E. Reasonable Expenses.**

Pursuant to Rule 37(a)(5)(A), Federal Rules of Civil Procedure, Plaintiffs request an award of reasonable expenses incurred in bringing the Motion. Doc. No. 61 at 2. Rule 37(a)(5)(A) requires the Court to award reasonable expenses to the moving party if the Motion is granted, unless the movant did not attempt to resolve the motion with the opposing party prior to filing the Motion, the opposing party's nondisclosure was substantially justified, or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). In this case, Plaintiffs are entitled to verified answers to all of their interrogatories, but the majority of the Motion has been denied. Accordingly, pursuant to Rule 37(a)(5)(A)(iii), Federal Rules of Civil Procedure, the Court finds that an award of expenses would be unjust and, therefore, the Court declines to award expenses in this case.

**III.   CONCLUSION.**

Based on the foregoing, it is hereby **ORDERED** that:

1. The Motion (Doc. No. 61) is **GRANTED** to the extent that **on or before AUGUST 2, 2016, Defendants shall serve sworn and signed answers to all of Plaintiffs' interrogatories and all of Defendants' objections to the same have been waived**; and

2. The Motion (Doc. No. 61) is otherwise **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on July 25, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties