UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AARON HIRSCH, individually an on
behalf of all others similarly situated,

       Plaintiff,

v.                                     Case No. 3:17-cv-1215-J-39JBT

ENSURETY VENTURES, LLC,
LYNDON SOUTHERN INSURANCE
COMPANY, INSURANCE COMPANY
OF THE SOUTH, LOTSOLUTIONS,
INC., AUTO KNIGHT MOTOR CLUB,
INC., ENSURETY, INC, and EGV
COMPANIES, INC,

       Defendants.
_____/

## ORDER

    **THIS CAUSE** is before the Court on the Report and Recommendation (Doc. 94;

Report) entered by the Honorable Joel B. Toomey, United States Magistrate Judge;

Plaintiff's Objections to Report and Recommendations (Doc. 98; Objection); and

Defendants' Responses to Plaintiff's Objections (Docs. 104-05; Response). In the

Report, the Magistrate Judge considered Defendants' Motions to Dismiss (Docs. 73,

and 78-79; Motions) and recommends that the Motions be granted to the extent that

Plaintiff's Revised Second Amended Complaint be dismissed without prejudice. Report

at 1-2.

    The Court "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b).  If no specific

objections to findings of fact are filed, the district court is not required to conduct de

novo review of those findings.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1).  If, on the other hand, a party files an objection, the district judge must conduct a de novo review of the portions of a magistrate judge's report and recommendation to which the party objects.  Kohser v. Protective Life Corp., 649 F. App'x 774, 777 (11th Cir. 2016); 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3) (on dispositive matters, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to").  The Court reviews de novo the Magistrate Judge's proposed findings of fact and legal conclusions to which Plaintiff has objected.  28 U.S.C. § 636(b)(1).

Plaintiff initiated this case on October 30, 2017 against Defendants Fortegra Financial Corporation and Ensured Ventures, LLC doing business as Omega Autocare. (Doc. 1). Plaintiff amended his initial complaint 4 times, leaving Plaintiff's Revised Second Amended Complaint (Doc. 63; "RSAC") as the operative complaint. Plaintiff now proceeds against 7 Defendants through 9 separate counts, all of which involve Defendants' purported violations of the Telephone Consumer Protection Act or Maryland's analogue statute. See generally RASC. Plaintiff classifies Defendants as either marketers or insurers of "vehicle service contracts ('VSCs')." Plaintiff alleges that Defendants Lyndon Southern Insurance Company Corporation, Insurance Company of the South, and LOTSoflutions, Inc. (the "Insurer Defendants") are subsidiaries of Fortegra Financial Corporation and insure the VSCs for Omega Autocare. RSAC ¶¶ 5-7.

Defendants Auto Knight Motor Club, Inc., EGV Companies, Inc, Ensurety, Inc., Ensurety Ventures, LLC, directly or indirectly market VSCs for Omega Autocare. Id. ¶¶ 8-11. Defendant Auto Knight is a subsidiary of Fortegra. Id. ¶ 8. Defendant Ensurety,

Inc., is an alter-ego or predecessor of EGV. Id. ¶ 10. Defendants EGV and Ensurety, Inc., are subsidiaries of Ensurety Ventures, with "[a]ll three companies [being] alter-egos of one another and operat[ing] collectively as the business known as Omega Autocare. Id. 12.

Omega Autocare markets VSCs throughout the United States through "numerous third-party sellers and marketers." ¶ 29. "Omega Autocare provides administrative services for VSCs, by, among other things, fielding complaints or claims . . . and finding and hiring 'call centers' or 'sellers' to make hundreds of thousands of telemarketing consumer calls for VSCs." Id. ¶ 30.[1] "[W]hen obtaining a VSC by telemarketing through a call center, [Omega] shares information with the call center. . . ." Id. at ¶ 33. That information is provided through a software that "identifies the consumer, his or her VSC product, pricing per type of car, local car dealership information, credit card information, and the policy itself." Id. Omega Autocare also shares "consumer VSC information" with "financial services vendors . . . which split fees between the call centers [and] Omega Autocare . . . ." Id. at ¶ 34. Owing to the Omega Autocare's relationship with the call centers, Plaintiff claims that Omega Autocare is vicariously liable for any illegal telemarketing practices on behalf of the call centers. Id. ¶ 35.

"[O]n April 11, 2016, Omega Autocare (through EGV Companies, Inc.) contracted with Lyndon, ICS, Auto Knight, and LOTS to sell VSCs through third-party 'sellers' which include call centers . . . . The contract is called the 'Program Agreement.'" Id. ¶ 40. The Agreement provides that Lyndon, ICS, Auto Knight, and LOTS, underwrite and

_____

[1] Certain unnamed call centers are alleged to have hired other "call centers to make robocalls and telemarketing calls." Id. ¶ 32. The Report classifies the call centers engaged to make telemarketing and robocalls as Tier 2 Call centers. Report at 7.

insurer VSCs and "control, direct, or otherwise decide" how Omega Autocare markets VSCs." Id. ¶ 41. Among other things, Omega Autocare obtains prior approval from Lyndon, ICS, Auto Knight, and LOTS before marketing VCSs in a particular region; Lyndon, ICS, Auto Knight, and LOTS have the right to cancel any contracts between Omega Autocare and a call center; Omega Autocare ensures that call centers only use marketing materials preapproved by Lyndon, ICS, Auto Knight, and LOTS; Lyndon, ICS, Auto Knight, and LOTS have the right to audit Omega Autocare. Id. ¶ 41(a),(c),(f), (r), (u). Plaintiff claims that the rights enjoyed by Lyndon, ICS, Auto Knight, and LOTS in relation to Omega Autocare make them vicariously liable for "the illegal telemarketing practices selling VSCs for the benefit of Omega Autocare." Id. ¶ 42.

Following Plaintiff's description of Defendants' relationship to one another and other non-party actors, Plaintiff claims that "Defendants contacted Plaintiff on his telephone number" in May and June 2017 using an automated dialing system without Plaintiff's consent and despite Plaintiff placing his phone number on the national do not call list. Id. ¶¶ 43, 46-48. Plaintiff's phone service during this time was "a voice over internet protocol ('VoIP')" provided by MagicJack for which Plaintiff paid $35.00 yearly. Id. ¶¶ 44-45.[2] Plaintiff relies on the May and June 2017 calls in asserting his claims, which he does in 9 numbered counts where each count is brought against all Defendants collectively. See, e.g., id. ¶¶ 84 ("Defendants made the calls without obtaining prior express written consent . . . .").

---

[2] Plaintiff muddles his allegations regarding the money he paid for phone service in paragraph 57 of the RSAC in effort to establish that he was charged for the calls received from Defendant. Despite Plaintiff's claim that he "was charged for each call," there are no allegations that Plaintiff was charged for anything other than his annual fee, which Plaintiff would have been required to pay regardless of Defendants' calls.

Because Plaintiff brings each of his counts against Defendants collectively, the Report recommended that the RSAC should be dismissed without prejudice because it constitutes "a shotgun pleading that impermissibly lumps multiple Defendants and non-parties together . . . ." Report at 6. Specifically, the Report highlights the dearth of allegations pertaining to the relationship between Defendants and Tier 2 Call centers, or any identification of a specific Defendant responsible for the calls Plaintiff received. Id. at 7-13. The Report also posited that the RSAC was not a short and plain statement as required by Federal Rule of Civil Procedure 8, and further, that Plaintiff failed to sufficiently plead a claim for vicarious liability. Id. at 6.

In support of its determination, the Report cites to a prior Report and Recommendation in this case wherein the Magistrate Judge determined that Plaintiff failed to comply with Rule 8 because he lumped both Defendants together. Report at 8-9 (citing Doc. 40 at 5-6; 6/26/18 Report ("Because it is unclear from the Amended Complaint who made the subject calls, or what the specific relationship between Defendants is, it is also unclear under what theory of liability Plaintiff intends to proceed against Fortegra.")). The 6/26/18 Report recommended that Plaintiff's Amended Complaint (Doc. 18), be dismissed for that reason. 6/26/18 Report at 11. Neither party objected to the 6/26/18 Report and the undersigned adopted it on July 30, 2018. (Doc. 47). Instead of ameliorating the deficiencies of the Amended Complaint, the Report argues Plaintiff compounds them by increasing the number of Defendants from two to seven.

In his opening salvo, Plaintiff argues the Report is wrong in relying on the 6/26/18 Report. Plaintiff properly states that "the prior R&R specifically denied Omega's Motion

- 5 -

to Dismiss on Counts 1 through 4 concerning Plaintiff's ATDS allegations . . . ." Obj. at 2-3 (emphasis omitted). However, Plaintiff fails to offer any explanation of how the 6/26/18 Report's determination that Plaintiff sufficiently plead that an automated dialer or recorded voice was used undermines a finding that Plaintiff's allegations impermissibly lump Defendants together—making it impossible to tell who utilized the ATDS or prerecorded voice. This is the same issue that plagues the RSAC.

All Defendants are still lumped together, and Plaintiff never specifically identifies what Defendant or call center called Plaintiff. Moreover, the allegations are not clear enough to establish that all Defendants can be viewed as one legal entity once legal conclusions are removed. This failing is made most obvious when reviewing Plaintiff's claims that call centers utilized by Defendants engaged Tier 2 call centers so that the Tier 2 call centers could place illegal calls. Plaintiff never bridges the void between Defendants and the Tier 2 call centers, and without alleging that a Tier 1 call center or which Defendant placed the calls to Plaintiff, the Court and Defendants are left to guess as to who is responsible for Plaintiff's claims. This guessing game is particularly troubling where this case has been pending for nearly two years, Plaintiff has been warned about lumping Defendants together, and Plaintiff has had adequate opportunity to engage in discovery to hone his allegations. For this reason, Plaintiff's RSAC is due to be dismissed. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015) (describing the lumping of Defendants together "without specifying which of the defendants are responsible for which acts or omissions" as a pleading "sin" that renders a complaint a "shotgun pleading").

In recommending dismissal, the Report acknowledges that dismissal with prejudice may be appropriate, but ultimately recommends that Plaintiff be afforded one final opportunity to file an amended complaint. Report at 2-3. However, the undersigned rejects this suggestion in light of <u>Jackson v. Bank of Am., N.A.</u>, 898 F.3d 1348 (11th Cir. 2018). <u>Jackson</u> considered an appeal from a district court's order of dismissal of the appellants' amended complaint. <u>Id.</u> The appellants' initial complaint was amended after the defendants in the district court case moved to dismiss the initial complaint, in part, because the initial complaint was a shotgun pleading. <u>Id.</u> at 1354. Before the district court could rule on the motions to dismiss, the appellants informed the district court that they did not oppose the motions to dismiss and requested an opportunity to file an amended complaint, which the district court granted. <u>Id.</u> When the appellants filed the amended complaint, it was even worse than the initial complaint and still a shotgun pleading. <u>Id.</u> at 1354 ("The amended complaint swelled to twenty-three pages and 123 paragraphs, made minor changes to a number of the factual allegations, added two new counts, and listed one or more Defendants in parentheses under the heading of each count . . . ."). Ultimately, the district court considered the amend complaint on its merits and dismissed the amended complaint with prejudice as to all but one of the defendants. <u>Id.</u> at 1355.

On appeal, the Eleventh Circuit highlighted the difficulty of understanding the 28 pages long amended complaint, which it found to be "neither 'short' nor 'plain.'" <u>Id.</u> at 1357. The court also noted the "many pages of the Federal Reporter condemning shotgun pleadings . . . " and the many reasons justifying that condemnation. <u>Id.</u> The court explained that

> Absent the dismissal of the amended complaint, the
> Defendants, in framing their answer, would likely have
> responded in kind, with a multitude of affirmative defenses
> bunched together applying to each of the
> amended complaint's counts. Put colloquially: garbage in,
> garbage out. Hence, the final resolution of the appellants'
> claims would have been time-consuming and even more of
> an undue tax on the Court's resources. Tolerating such
> behavior constitutes toleration of obstruction of justice. This
> is why we have condemned shotgun pleadings time and
> again, and this is why we have repeatedly held that a District
> Court retains authority to dismiss a shotgun pleading on that
> basis alone.

Id.

To bring the message home, the Eleventh Circuit affirmed the district court's

dismissal of prejudice but on the ground that the amended complaint constituted a

shotgun pleading. Id. at 1359. The court held that the defendants' unopposed motions

to dismiss the initial complaint placed the appellants on sufficient notice to support a

dismissal with prejudice. Id. at 1358. Finally, The court ordered appellants to show

cause why sanctions should not be imposed for appealing what was so obviously a

shotgun complaint. Id. at 1360.

Consistent with the reasoning underpinning Jackson, the Court finds that

allowing Plaintiff another opportunity to plead his case is unwarranted. Plaintiff is

represented by counsel and has had two years to cobble together a viable complaint.

The Court placed Plaintiff on notice that he could not lump all Defendants together and

dismissed his Amended Complaint without prejudice for this very reason. Instead,

Plaintiff only compounded the difficulty associated with reviewing the 25 page RSAC

where the number of defendants grew from 2 to 7. There is no reason to allow to

Plaintiff to file what would be his sixth complaint where he committed the same sin that

led to the prior dismissal of his Amended Complaint. This is especially true where

Plaintiff has had two years of discovery at his disposal to undercover whatever factual allegations he might have need to shore up his operative complaint.[3]

Accordingly, after due consideration, it is

**ORDERED:**

1.  Plaintiff's Objections to Report and Recommendations (Doc. 98) are **OVERRULED**.

2.  The Report and Recommendation (Doc. 94) is **ADOPTED** as the opinion of this Court except where modified herein.

3.  Defendants' Motions to Dismiss (Docs. 73, and 78-79) are **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk of the Court shall terminate all pending motions and close the file.

**DONE** and **ORDERED** in Jacksonville, Florida this 6th day of August, 2019.

BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

The Honorable Joel B. Toomey
United States Magistrate Judge

Counsel of Record

---

[3] Additionally, Plaintiff has not properly requested leave to file a fifth amended complaint.